**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**RONALD E. GREEN,**

    **Plaintiff,**

vs.

**KEVIN K. McALEENAN, as acting Secretary of the United States Department of Homeland Security,**

    **Defendant.**

_____/

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff RONALD E. GREEN, through undersigned counsel, sues Defendant KEVIN K. McALEENAN, as acting Secretary of the United States Department of Homeland Security ("DHS"), and alleges as follows:

1. This is an action for unlawful disability discrimination and harassment, and unlawful retaliation in violation of Sections 501 and 504a(a)(1) of the Rehabilitation Act, 29 U.S.C. §§791 and 794a(a)(1) ("Rehabilitation Act"). In addition, this is an action for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII").

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) and the provisions of the Rehabilitation Act and Title VII.

3. Venue is proper in this Court because all actions and claims asserted herein occurred within the Southern District of Florida.

4. Plaintiff is, and at all relevant times has been, a resident of Miami-Dade County, Florida, and is *sui juris*. Plaintiff is an African-American who was employed by Defendant in its U.S. Immigrations and Customs Enforcement ("ICE") division for over 19 years until May 31, 2018 when, due to disability discrimination, a failure to provide him a reasonable accommodation, retaliation, and a hostile work environment that Plaintiff suffered as alleged hereinbelow, Plaintiff felt compelled to take early retirement from Defendant. At all relevant times hereto, and as of the date of his taking early retirement, Plaintiff was employed by ICE as a Senior Intelligence Research Specialist, GS-0132-13/8, in the ICE Office of Intelligence in Miami, Florida.

5. Defendant is the acting Secretary of the United States Department of Homeland Security ("DHS"). He is being sued here in his official capacity as the acting head of the DHS, which was at all relevant times hereto, and still is, an agency of the federal government and was at all relevant times Plaintiff's employer.

6. In or about March 2013, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), a permanent disabling condition. Plaintiff's PTSD was and still is a qualifying disability under the Rehabilitation Act in that it was and still is an impairment that limits Plaintiff in the performance of one or more major life activities, including but not limited to sleeping, cognitive functioning, concentrating, breathing properly, and thinking.

8. For most of his 19-plus years with the agency and until January 2017, Plaintiff was never disciplined and had received consistently excellent performance evaluations.

9. After learning of his PTSD diagnosis in March 2013 and commencing treatment therefor, Plaintiff notified his then management team of his disabling condition. Upon Plaintiff's request to his then management, and consistent with his treating psychiatrist's and psychologist's recommendations, Plaintiff was informally accommodated for his PTSD by not being required to do intelligence briefings, which entailed public speaking-style presentations that were extremely stressful for Plaintiff and exacerbated his PTSD. Until the beginning of 2017, Plaintiff was able to fully and successfully perform his job without having to conduct the intelligence briefings and his annual performance evaluations were consistently excellent, including a rating of "Achieved Excellence" for 2016.

10. At the beginning of 2017, however, there was a management change at the Special Agent in Charge ("SAC") and the duty section, the Special Agent in Charge Intelligence Program ("SIP"), in which Complainant was employed as a Senior Intelligence Research Specialist. The new management team consisted of SAC Mark Selby (Plaintiff's fourth-line supervisor), Deputy SAC Anthony Salisbury (Plaintiff's third-line supervisor), Chief Intelligence Officer ("CIO") Jacob Dumansky (Plaintiff's second-line supervisor), and Plaintiff's first line supervisor, Jada Orr (a/k/a "Jada Keltz").

11. In January 2017, Plaintiff informed the new Deputy SAC, Mr. Salisbury, and the CIO, Mr. Dumansky, of his PTSD and his need for accommodation in not being required to conduct the intelligence briefings. However, instead of receiving understanding and cooperation from Messrs. Salisbury and Dumansky, Plaintiff received only resistance and negative feedback. When Plaintiff refused to do the January 2017 intelligence briefing because of his PTSD and thereafter asked to speak directly and in

3

private with the SAC, Mr. Selby, about the situation and his PTSD, he was admonished by Mr. Salisbury for going outside the chain of command and then received from Mr. Salisbury a written counselling dated February 6, 2017, a copy of which is attached as Exhibit "A". The counselling threatened Plaintiff with further disciplinary action if he did not comply in the future.

12. On several occasions in early February 2017, and continuing throughout 2017, Plaintiff was called into meetings with Deputy SAC Salisbury and CIO Dumansky, both of whom were aware of his PTSD, and was subjected to intimidation and interrogation tactics, including being interrogated about his refusals to conduct the intelligence briefings. These intimidation and interrogation tactics exacerbated Plaintiff's PTSD and its symptoms.

13. On February 7, 2017, Plaintiff submitted a formal written request for reasonable accommodation for his PTSD in which he requested the accommodation, previously provided to him by the prior management team, of being excused from conducting the intelligence briefings. A copy of that reasonable accommodation request is attached as Exhibit "B". Plaintiff's reasonable accommodation request was denied on June 14, 2017 by SAC Selby, with no reasonable alternative accommodation being offered or provided. A copy of Mr. Selby's denial is attached as Exhibit "C".

14. On February 25, 2017, Plaintiff filed with the ICE Office of Professional Responsibility ("OPR") a grievance of Mr. Salisbury's written counseling as well as other actions, including but not limited to the interrogation and intimidation tactics, that had been taken against him by members of the new management, including his supervisor, Ms. Orr, alleging that such actions by the new management team had created

a hostile work environment for Plaintiff. A copy of that grievance is attached as Exhibit "D". In this grievance, Plaintiff mentioned that the actions may have been taken against him due to his African-American race and/or age, and in particular his PTSD. Plaintiff also mentioned in his grievance that he was suffering hostile adverse conduct by management, including that of Ms. Orr, while he was out of work on workers' compensation leave for a back injury and also because he had to take leave for major dental surgery. Although apparently members of Plaintiff's management team were interviewed about Plaintiff's grievance, and thus were made aware not only of his PTSD but also of his complaints of discrimination and harassment, no corrective or remedial action was ever taken by Defendant.

15. On June 3, 2017, Plaintiff filed a second grievance with the ICE OPR concerning his continuing exposure to a hostile work environment from his management team, specifically Messrs. Salisbury and Dumansky and Ms. Orr. A copy of this second grievance is attached as Exhibit "E". In this second grievance, Plaintiff stated among other things that the continuing actions being taken against him were due to discrimination and retaliation, and in particular because of his PTSD. To date, no corrective or remedial action was ever taken by Defendant on Plaintiff's complaint.

16. On September 19, 2017, Plaintiff received another written counselling, this time from the Chief Intelligence Officer, Mr. Dumansky, one of the persons who, with Mr. Salisbury and Ms. Orr, had engaged in conduct that had created the discriminatory and hostile work environment of which Plaintiff had complained in his February 25, 2017 and June 3, 2017 grievances. A copy of this second write-up is attached as Exhibit "F". This second counselling was again for Plaintiff's not agreeing to

5

perform an intelligence briefing, a situation that Messrs. Salisbury and Dumansky, and Ms. Orr had repeatedly been made aware by Plaintiff would exacerbate his PTSD. Plaintiff was also written up for not preparing a "counter-intelligence assessment", something that he had not been trained or instructed how to do and had asked Ms. Orr to help him with, which request for help Ms. Orr, who admitted also to not being trained to do such paperwork, declined. Significantly, the write-up referenced the prior February 6, 2017 written counselling.

17. On September 25, 2017, Plaintiff submitted an internal written complaint of discrimination to an EEO Counselor, Yves Kongolo, a copy of which is attached as Exhibit "G", in which he complained of disability and race discrimination.

18. On October 2, 2017, Plaintiff submitted another formal request for reasonable accommodation to allow him to perform his job, as he had been doing, without having to do the intelligence briefings. A copy of this second reasonable accommodation request is attached as Exhibit "H". This request for accommodation was supplemented by a letter from Plaintiff's undersigned attorney, dated January 23, 2018, a copy of which is attached as Exhibit "I", in which an additional, temporary accommodation of transferring Plaintiff for 90 days to a different supervisor to allow him to address the then pending administrative and EEO issues with his supervisors was requested. These requests were denied by Ms. Orr on May 7, 2018, with no reasonable alternative accommodations offered or provided. A copy of Ms. Orr's denial is attached as Exhibit "J".

19. On October 2, 2017, Plaintiff, without justification, was removed by Mr. Salisbury from an additional work assignment in which he had been performing duties for approximately three years, that of Special Security Representative.

20. On October 12, 2017, Plaintiff received his Fiscal Year 2017 ("FY17") performance evaluation which contained an unfair and inaccurate negative performance rating based on the disability-related issues over which he had received the written counsellings described hereinabove. A copy of the negative FY 17 performance evaluation and the unfairly negative ratings is attached as Exhibit "K".

21. On October 30, 2017, Plaintiff filed a third grievance with the ICE OPR complaining about the continuing hostile work environment he was being exposed to, including the write-ups and unfairly negative FY17 performance rating he had received. A copy of this third grievance is attached as Exhibit "L". In this grievance, Plaintiff stated that the continuing actions that were being taken against him were due to discrimination and retaliation, and in particular because of his PTSD. No corrective or remedial action was taken on this grievance by Defendant.

22. On November 6, 2017, Plaintiff was formally disciplined by receiving an official Letter of Reprimand ("LOR") from Mr. Salisbury, the person in management of whom Plaintiff had specifically complained in writing had been discriminating against him because of his PTSD and had retaliated against him because of his prior grievance and discrimination complaints. A copy of this LOR is attached as Exhibit "M". The basis of the LOR was Plaintiff's opposition to the harassing and confrontational conduct that had been engaged in by Mr. Dumansky and Ms. Orr, the two other members of management of whom Plaintiff had specifically complained in writing had been

7

discriminating against him because of his PTSD and had retaliated against him because of his prior grievances and complaints.

23. On November 6, 2017, Plaintiff also received a letter, a copy of which is attached as Exhibit "N", authored by Mr. Dumansky that informed Plaintiff that he had been denied a Within Grade Increase ("WIGI") because of his negative FY17 performance rating. Plaintiff, through his undersigned counsel, requested reconsideration of this WIGI denial, but the request was denied because of the FY17 performance rating.\

24. By letter dated November 15, 2017, to Mr. Salisbury, with copy to Plaintiff's EEO Counselor, Mr. Kongolo, a copy of which is attached as Exhibit "O", Plaintiff's undersigned counsel informed Mr. Salisbury of his representation of Plaintiff in the EEO proceedings, and further informed Mr. Salisbury that his actions in giving Plaintiff an unjustified and unfairly negative performance evaluation, coupled with the denial of the WIGI and the denial of Plaintiff's requests for reasonable accommodation for his PTSD, were discriminatory and in retaliation for his internal complaints of discrimination and harassment. In that letter, Plaintiff's undersigned counsel asked Mr. Salisbury to reconsider the denial of the WIGI, which had a seriously negative impact on Plaintiff's financial condition and future retirement benefits.

25. By letter to Mr. Selby dated January 23, 2018 (attached as Exhibit "P"), Plaintiff's undersigned counsel notified the SAC, Mr. Selby, as well as Deputy SAC Salisbury and the EEO Counselor, Mr. Kongolo, that Plaintiff had pending EEO claims and that he requested a 90-day transfer for Plaintiff to a new supervisor pending resolution of those claims, and to avoid the exacerbation of Plaintiff's PTSD. As

discussed above, this request for a temporary accommodation was denied by Ms. Orr in her letter to Plaintiff dated May 7, 2018 (attached as Exhibit "J").

26. On May 31, 2018, because of Defendant's failure and refusal to provide Plaintiff with a reasonable accommodation for his PTSD, Defendant's continuously hostile and harassing actions taken against Plaintiff through his supervisors, and facing the prospect of his PTSD continuing to worsen, Plaintiff, upon his psychiatrist's and psychologist's recommendations, effectuated his early, yet undesired, retirement from Defendant, losing substantial compensation as a result of reduced retirement benefits.

27. Plaintiff timely sought EEO counselling for his discrimination and retaliation claims, and more than 180 day has passed since Plaintiff commenced the EEO process and filed his EEOC Complaints of Discrimination, with no conclusive findings being reached by the EEOC. Accordingly, Plaintiff has exhausted his applicable administrative remedies under the Rehabilitation Act prior to bringing this suit.

28. Plaintiff is entitled to recover his attorney's fees as provided in 29 U.S.C. §794a(a)(3) and Title VII. In that regard, Plaintiff has hired the undersigned law firm to represent him and has agreed to pay the firm a reasonable fee for its services.

**COUNT I – UNLAWFUL DISABILITY DISCRIMINATION**

29. Plaintiff re-alleges paragraphs 1 through 28 as if set forth fully herein.

30. At all relevant times, Plaintiff had a qualifying disability – his PTSD -- that limited one or more of his major life activities, including but not limited to sleeping, cognitive functioning, concentrating, breathing properly, and thinking.

31. At all relevant times, Plaintiff was an individual with a qualified disability under the Rehabilitation Act who, with reasonable accommodation, could have performed

9

the essential functions of his job as an Intelligence Research Specialist. However, as Plaintiff was subjected to continuing denials to be reasonably accommodated, harassment and retaliation from Defendant, Plaintiff's disability was exacerbated to the point that his PTSD condition and its symptoms worsened, he was required by physician's recommendations to increase his medical treatment, and ultimately, on his physician's recommendations, had to take an early retirement from Defendant.

32. Plaintiff repeatedly requested reasonable accommodation from Defendant for his disability, but Defendant refused and failed to provide it or even to engage in the required interactive process to determine what if any reasonable accommodations were available. Instead, Plaintiff was subjected to continuous harassing and intimidating conduct by his supervisors, acting in the course and scope of their business, including but not limited to being interrogated and pressured by his supervisors in meetings, being unfairly reprimanded, being called "mad", being given an unfairly negative FY17 performance evaluation, being denied the WIGI salary increase, being informed of removal from his position, and being constructively discharged by an early and otherwise undesired retirement.

33. Defendant violated the terms of the Rehabilitation Act by effectively denying Plaintiff his requested reasonable accommodations, not engaging in the required interactive process to arrive at a reasonable accommodation, and in not offering any other form of reasonable accommodation. Defendant also violated the Rehabilitation Act by harassing and forcing Plaintiff to perform duties against Plaintiff's physician's recommendations, intimidating Plaintiff in meetings because of his disability, unfairly reprimanding Plaintiff because of his disability, unfairly giving Plaintiff a negative

performance review based on his disability, denying Plaintiff a salary increase because of his disability, and then compelling Plaintiff to take an early, otherwise undesired retirement.

34. As a direct and proximate result of Defendant's actions in violating the Rehabilitation Act, Plaintiff has suffered, and continues to suffer, damages, including lost pay, lost benefits, and decreased retirement benefits, and compensatory damages in the form of past and present personal injuries (including exacerbation of pre-existing medical conditions), severe emotional distress, mental anguish, humiliation, and loss of dignity.

WHEREFORE, Plaintiff demands judgment against Defendant for the following relief:

A. A declaration that Defendant's conduct constitutes unlawful disability discrimination in violation of the Rehabilitation Act;

B. An award to Plaintiff of any lost pay, lost income, lost benefits, and lost retirement benefits due to a forced early retirement;

C. An award to Plaintiff of compensatory damages, including damages for emotional distress, mental anguish, humiliation, loss of dignity, and personal injuries;

D. An award to Plaintiff of interest;

E. An award to Plaintiff of costs and attorney's fees;

F. An award to Plaintiff for any adverse tax consequences from any awarded and paid damages hereunder; and

G. Such further relief as the Court deems just and proper.

## COUNT II – UNLAWUL DISABILITY HARASSMENT

35. Plaintiff re-alleges paragraphs 1 through 28, 30, 31, and 34 as if set forth fully herein.

11

36. Plaintiff was subjected to continuous harassing and intimidating conduct by his supervisors, acting in the course and scope of their business, including but not limited to being interrogated and pressured by his supervisors in meetings, being unfairly reprimanded, being called "mad", being given an unfairly negative FY17 performance evaluation, being denied the WIGI salary increase, being informed of removal from his position, and being constructively discharged by an early and otherwise undesired retirement.

WHEREFORE, Plaintiff demands judgment against Defendant for the following relief:

A. A declaration that Defendant's conduct constitutes unlawful disability harassment in violation of the Rehabilitation Act;

B. An award to Plaintiff of any lost pay, lost income, lost benefits, and lost retirement benefits due to a forced early retirement;

C. An award to Plaintiff of compensatory damages, including damages for emotional distress, mental anguish, humiliation, loss of dignity, and personal injuries;

D. An award to Plaintiff of interest;

E. An award to Plaintiff of costs and attorney's fees;

F. An award to Plaintiff for any adverse tax consequences from any awarded and paid damages hereunder; and

G. Such further relief as the Court deems just and proper.

### COUNT III – UNLAWFUL DISABILITY RETALIATION

37. Plaintiff re-alleges paragraphs 1 through 25, 28, 30, 31, and 34 as if set forth fully herein.

38. Plaintiff engaged in protected activity under the Rehabilitation Act in that he filed and pursued both internal complaints of harassment and discrimination based on his disability, filed and pursued an EEO Charge of Discrimination based on his disability and for alleged retaliation, and filed and pursued requests for reasonable accommodation for his disability, as specifically alleged in paragraphs 13 through 15, 17, 18, 21, 24, and 25 above.

39. Defendant knew about Plaintiff's protected activity at the time Defendant subjected Plaintiff to the adverse and harassing actions described and specifically alleged in paragraphs 16, 18, 19, 20, 22, 23, and 26 above. Defendant's adverse actions were taken against Plaintiff because of Plaintiff's having engaged in protected activity under the Rehabilitation Act.

40. Defendant's adverse actions against Plaintiff following Plaintiff engaging in protected activity constitute unlawful retaliation against Plaintiff under the provisions of the Rehabilitation Act.

WHEREFORE, Plaintiff demands judgment against Defendant for the following relief:

A. A declaration that Defendant's conduct constitutes unlawful retaliation in violation of the Rehabilitation Act;

B. An award to Plaintiff of any lost pay, lost income, lost benefits, and lost promotional opportunities;

C. An award to Plaintiff of compensatory damages, including damages for emotional distress, mental anguish, humiliation, loss of dignity, and personal injuries;

D. An award to Plaintiff of interest;

E. An award to Plaintiff of costs and attorney's fees;

F.	An award to Plaintiff for any adverse tax consequences from any awarded and paid damages hereunder; and

G.	Such further relief as the Court deems just and proper.

## COUNT IV – UNLAWFUL TITLE VII RETALIATION

41.	Plaintiff re-alleges paragraphs 1 through 28 as if set forth fully herein.

42.	Plaintiff engaged in protected activity under Title VII in that he filed and pursued both internal complaints of harassment and discrimination based on his race, and filed and pursued an EEO Charge of Discrimination based on his race and for alleged retaliation, as specifically alleged in paragraphs 13 through 15, 17, 18, 21, 24, and 25 above.

43.	Defendant knew about Plaintiff's protected activity at the time Defendant subjected Plaintiff to the adverse and harassing actions described and specifically alleged in paragraphs 16, 18, 19, 20, 22, 23, and 26 above. Defendant's adverse actions were taken against Plaintiff because of Plaintiff's having engaged in protected activity under Title VII.

44.	Defendant's adverse actions against Plaintiff following Plaintiff engaging in protected activity constitute unlawful retaliation against Plaintiff under the anti-retaliation provisions of Title VII.

45.	As a direct and proximate result of Defendant's actions in violating Title VII's anti-retaliation provisions, Plaintiff has suffered, and continues to suffer, damages, including lost pay, lost benefits, and decreased retirement benefits, and compensatory damages in the form of past and present personal injuries (including exacerbation of pre-existing medical conditions), severe emotional distress, mental anguish, humiliation, and loss of dignity.

WHEREFORE, Plaintiff demands judgment against Defendant for the following relief:

A.  A declaration that Defendant's conduct constitutes unlawful retaliation in violation of Title VII;

B.  An award to Plaintiff of any lost pay, lost income, lost benefits, and lost promotional opportunities;

C.  An award to Plaintiff of compensatory damages, including damages for emotional distress, mental anguish, humiliation, loss of dignity, and personal injuries;

D.  An award to Plaintiff of interest;

E.  An award to Plaintiff of costs and attorney's fees;

F.  An award to Plaintiff for any adverse tax consequences from any awarded and paid damages hereunder; and

G.  Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

DATED:  October 31, 2019.

        **RODERICK V. HANNAH, ESQ., P.A.**
        Counsel for Plaintiff
        8751 W. Broward Boulevard, Suite 303
        Plantation, FL 33324
        Telephone:  954/362-3800
        Facsimile:  954/613-5902
        Email:  rhannah@rhannahlaw.com

By  *s/ Roderick V. Hannah*
        RODERICK V. HANNAH
        Fla. Bar No. 435384